JUDGE PETERS
delivered the opinion op the court.
This suit in equity was brought by tbe personal representative of Thos. R. Upshaw against S. L. Debow to subject a tract of land in Fulton County to sale to pay an unsatisfied balance of the purchase-money.
It is alleged in the petition that decedent, on December 25, 1860, sold to tbe defendant tbe south-east and soutli-west quarters of section 4, of township 1, range 6, west; and tbe south-east fractional quarter of section 5, township 1, range 6, west; for four thousand five hundred dollars — three thousand of which was paid down, and a note executed on the day the contract was made for the residue, due and payable one day after date; and on the same day decedent executed a deed to defendant for the land, a copy of which is filed as part of the petition; and judgment is asked for the amount unpaid on said *444 note, after deducting the credits indorsed thereon, and for sale of so much land as would be necessary to satisfy the same.
Debow in his answer, which he made a cross-petition against the plaintiff, the heirs of Thos. R. Upshaw, and the heirs of Merriwether, admits he executed the note sued on for part of the price of the land he purchased, which he states was four thousand six hundred and thirty-two dollars, instead of four thousand five hundred dollars as charged in the petition; that of the price he paid down three thousand one hundred and thirteen dollars, and executed his note for the residue, being one thousand five hundred and nineteen dollars, due December 26, 1860; that decedent represented the tract as containing three hundred and eighty-six acres when in fact it only contained three hundred and four acres, as is shown by the deed under which he claims, a copy of which was filed; that before he made the purchasé he informed decedent that he desired to engage in the business of farming, and would only purchase land suited to that business; that decedent represented Ms land as superior farming land, and invited him to go with him to examine it, which he did; that decedent showed him land south of his tract, which was rich ridge land, above overflow, and which he represented as being within his boundary; that he did not own nor propose to sell him in the tract more than thirty or forty acres subject to overflow, and that the balance of his tract was dry upland, well adapted to farming purposes, and assured him that the rich ridge land south of his true boundary was his, and relying on these statements of decedent he made the purchase; that said upland on the south of said boundary did not then and never did belong to said decedent, but belonged to the heirs of Merriwether, and to consummate his fraudulent purpose he caused McMurry, the surveyor of Fulton County, to make an incorrect survey by showing false corners, and had the lines so run as to include the ridge south of his true line, *445 when he knew the same clid not belong to him, and was not embraced in his deed, so as to induce appellee to make said contract, and that he could not effect a sale to him unless that land was included; that upon a correct survey of the quarter sections and fractional quarter to which appellant’s intestate had title, and which he fraudulently conveyed to him, do not include said ridge; that there are one hundred and eighty-two acres of land between the true southern boundary of the land owned by said decedent and the southern line as run by McMurry, and which he represented as his true southern line, and that the land north of the actual line is subject to overflow, swampy, and very inferior to that which he represented to appellee he was selling him, and not worth half as much as the land he believed he was getting; that he entered upon the ridge land shown him by intestate as a part of his purchase, and made lasting and valuable improvements thereon by clearing, fencing, and building houses, and was not apprised of the fraud practiced on him until recently, before the institution of this suit; that he accepted the deed, believing that all the land shown by said intestate to him was embraced in said deed, and never would have made the contract, nor accepted the deed if he had not been deceived by the fraudulent misrepresentations of said intestate as to the boundary of said land.
Merriwether’s heirs, having been made defendants to the cross-petition by appropriate pleadings, assert title to the land south of the true southern line of said appellant’s intestate; to which, on final hearing, it was adjudged by the court below they were entitled, and judgment rendered in their favor for the same. And it was further adjudged that the note sued on should be canceled, and that appellee in addition thereto recover against the heirs of Upshaw, his vendor, the sum of two thousand seven hundred and seventy dollars, with interest from the date of the judgment, and costs; it having been *446 admitted that they had received assets by descent from their said ancestor more than sufficient to satisfy the same. From that judgment Upshaw’s heirs and representatives have appealed, and Debow prosecutes a cross-appeal; the one complaining that the judgment is for too much, and the other that the contract was not rescinded.
If cross-appellant is entitled to a rescission, that will dispense with the consideration of the questions raised on the original appeal, and that therefore is the primary question to be disposed of.
In Campbell v. Whittingham, 5 J. J. Marsh. 96, this court held that where a conveyance had beén executed and a vendee let into possession a court of chancery will not decree a rescission of the contract, where there is no other ground for claiming its interposition than a defect of title in the vendor — the vendee having an adequate remedy in an action at law on the covenants contained in the deed of conveyance — and there would therefore be no propriety in nor necessity for the interference of the chancellor; and Miller v. Long, 3 Marsh. 336, is cited as sustaining the same doctrine. But if the contract be tainted with fraud, it vitiates the whole transaction, and presents a proper ground upon which to declare it void.
The first fact to be noticed in this case is that, upon a survey of the land conveyed to appellee, it is found to fall far below in quantity that represented in the deed to appellee, and that the deed under which the intestate claimed calls for three hundred and four acres only, when in the deed he made to appellee calling for the identical quarter and fractional quarter-» sections he professes to convey three hundred and eighty-six acres, knowing, as he must have done, what the deed to him called to contain.
2. He knew that the high fertile land lying south of his line, and which he represented as his land, and informed appellee would be included in his sale, formed the principal *447 inducement with appellee to make the purchase; and he, as must be presumed, caused the survey to be made so as to include said land, and in doing so he departed from the true lines and corners of his own land. This departure and error in the survey are shown by the evidence of Tyler and Brevard, practical surveyors, both of whom were upon the ground, found the true original lines and corners of intestate’s land, and also traced the survey made by McMurry for intestate, having been shown where he ran the lines of his survey by the men who carried the chain when that survey was made, and by a plat of both surveys explain the difference in location.
3. Although McMurry made the survey for said intestate, and made the quantity three hundred and eighty-six acres, when he made the deed to appellee he did not describe the metes and bounds of the tract as made by McMurry, but describes the land by quarter and fractional quarter-sections, precisely as it was described in his deed, and then gives the quantity different, representing the quantity therein to be eighty-two acres more than his deed calls for.
It seems to the court appellants, under these circumstances, have no peculiar claims on the chancellor to aid them in enforcing a contract procured to be made by misrepresenting material facts to a vendee, who appears to have been a stranger in the country, and which were confided in, and by which appellee was put off his guard, as may be presumed, and where the precise location and situation of the land could not have been ascertained without a correct survey of it. Nor was he bound to examine the title-papers. He might rely on the statements of his vendor, and in doing so, if the statements relied on were not true, the consequences must fall on him to whom confidence was given. (Young v. Hopkins, 6 Mon. 23.)
Wherefore the judgment is reversed on the cross-appeal of Debow, and the cause is remanded with directions to cancel the deed to him and to set aside the sale, and to refer the case *448 to the master with directions to charge Debow with the rents since he took possession of the land owned by Upshaw, and for the value of any wood and timber be may have sold from said land, and deterioration of soil, and credit him by the interest on the amount of purchase-money actually paid by him, and the ameliorations he may have made on the land owned by Upshaw. The judgment is affirmed on the original appeal.