## Hughes, et al. v. Collins.

(Decided February 9, 1923.)

### Appeal from Marion Circuit Court.

1. Vendor and Purchaser—Purchase Money Lien—Action to Enforce. —It is no defense to an action to enforce the collection of purchase money lien notes on land, where the deed contained a general warranty clause, that the conveyed title was imperfect, where defendant was in the peaceable possession and not evicted, unless plaintiff was insolvent, a non-resident, or was guilty of active fraud concerning the conveyed title.

2. Deeds—Estate Tail.—An estate, which at common law would be an estate tail, is converted by section 2343 of the statutes into an absolute fee in the first taker, and a deed by such one will convey an absolute fee simple title although the fee is a defeasible one where the beneficiary of the defeasance joins in the deed.

3. Vendor and Purchaser—Purchase Money Lien—Action to Enforce. —Whether a false and fraudulent representation concerning the suitability of the land conveyed for certain purposes would be a defense in a suit to collect the purchase money notes, if all the elements necessary to constitute the fraud and the deception practiced were properly alleged, we need not determine, since there is a want of proper allegations to present the question, as fully appears in the opinion.

HUGH B. COOPER for appellants.

H. S. McELROY and W. S. SPRAGENS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This equity action, filed by appellee, J. Arthur Collins, plaintiff below, against appellants, defendants below, sought the recovery of a judgment on described notes executed by appellant and defendant, George W. Hughes, to plaintiff as deferred payments on a tract of land in Marion county theretofore sold by plaintiff to defendant and upon which a lien was retained to secure the deferred payments. The answer defended upon the ground that the title conveyed by plaintiff to defendant was defective and a rescission was sought, although the title was warranted in the deed and defendant was in peaceable possession of the land and there was no allegation that plaintiff was insolvent, or a nonresident of the state, or that he *fraudulently* misrepresented the title. It was furthermore alleged as a defense, in substance, that plaintiff represented that the land was suitable for a dairy farm and that he concealed the fact that it was infected with wild onions, which, as alleged, rendered it unsuitable for any kind of agriculture, and especially so as a dairy farm. A demurrer was sustained to the answer and defendants declining to plead further a judgment was rendered in favor of plaintiff for the amount of the notes and for the enforcement of an adjudged lien upon the land, and complaining of it defendants have appealed.

If it were true that the title conveyed by plaintiff was imperfect then this court has held in numerous cases that defendant, holding by warranty deed, and in peaceable possession, may not defend this character of action therefor, unless plaintiff was either insolvent, a nonresi-

dent of the state, or was guilty of fraud in the transaction, which latter should relate to the title about which complaint is made, and it must be active and not mere passive fraud.

In the case of Ison v. Sanders, 163 Ky. 605, the rule applied by this court is thus stated: "In the absence of fraud, insolvency or nonresidence of the vendor, a vendee in peaceable possession of the granted premises under a deed containing a covenant of general warranty is not entitled to a rescission of the contract when sued for the purchase money, although the vendor may have represented the title as perfect, when in fact it was not. In such a case the vendee must pay the purchase money and rely upon the covenant of general warranty in case of an eviction. Simpson v. Hawkins, 1 Dana 303; English v. Thomasson, 82 Ky. 283." In the English case, referred to in the excerpt, the right to a rescission in such a case is denied "although the vendor may, at the time of the sale, have represented his title as perfect when in fact it was not so; and that in such a case the vendee must pay the money and rely upon a covenant of warranty in case of an eviction." Other cases to the same effect are Smith v. Jones, 97 Ky. 670; Joiner v. Trail, 27 Ky. L. R. 844, 86 S. W. 980; Abner v. York, 19 Ky. L. R. 643, and Trumbo v. Lockridge, 4 Bush 415.

If, however, the rule of practice were otherwise, the defense relied on would not be available in this case, since plaintiff's title was not defective, as alleged. The land was conveyed to plaintiff by W. H. Purdy and wife on December 4, 1917, and it was conveyed to Mrs. Purdy by her grandfather, R. C. Daniel, on April 30, 1909. In the caption of that deed Mrs. Purdy was named as "party of the second part." In the granting clause the conveyance is made "unto said Edna B. Daniel (who afterwards married W. H. Purdy) my said granddaughter and her bodily heirs and issue of her body the following described real estate," etc. In the habendum clause of the same deed it is said: "To have and to hold unto the said Edna B. Daniel and her bodily heirs and heirs of her body forever with covenant of general warranty, subject, however, to the following conditions." The grantor then provided that if his granddaughter died "without bodily heirs or issue of her body and her sister Cettie E. Putnam should survive said Edna B. Daniel then the aforesaid property shall hereby pass to and become the property of Cettie E. Putnam."

Much that might be termed metaphysical discussion is indulged in to show that the language of the Daniel deed created only a life estate in Mrs. Purdy, as granddaughter, with an entailed remainder to her bodily heirs, should she have any, which discussion is no doubt due to the confusion in the mind of counsel as to the applicability of sections 2343 and 2345 of the statutes, whereby it is insisted that the deed under consideration is governed by the latter section, rather than the former one, but in this he is evidently mistaken. The section upon which he relies (2345) describes the exact estate created by the common law and known as the Rule in Shelley's case, and the object and purpose of the section of the statute was to abolish that rule, which was, that if an estate *for life* was limited to the first taker and by the same conveyance an estate was limited to his heirs or the heirs of his body, the life tenant would take the fee, and the statute expressly provided that an estate so created "shall be construed to be an estate for life only in such person (the first taker), and a remainder in fee simple in his heirs, or the heirs of his body, or his issue or descendants." We have no limitation *for life* to Mrs. Purdy in the Daniel deed and it, necessarily, does not come within the provisions of the section of the statute referred to. On the contrary it is completely covered by section 2343, the purpose of which was to convert estates tail under the common law into absolute fee simple titles, and to abolish such estates in the law of real estate conveyances in this state. The effect of the statutes, as well as the rule for construction of the terms referred to therein, is quite extensively discussed in the recent case of Belcher v. Ramey, 173 Ky. 784, wherein a number of prior cases from this court are cited. Other cases will be found in the notes to the section in 1922 edition of the statutes, and we deem it unnecessary either to cite those cases or to insert herein extracts from any of those opinions. Under the rules for the interpretation of deeds and other muniments of title, referred to and discussed in those opinions, we entertain not the slightest doubt but that the expression in the Daniel deed, "bodily heirs or issue of her body," was intended to be used by the grantor as words of limitation and not words of purchase, and that the estate he conveyed to Mrs. Purdy was essentially an estate tail at the common law which the statute converted into a fee, but subject to imposed valid qualifying limitations the same as a common law created fee, for it also

has been held by this court that a defeasance clause in a deed of that character by way of ''conditional limitation'' or ''executory devise,'' if the estate is created by will, will not have the effect to defeat the application of the statute so as to narrow the estate of the first taker to one only for his life, but that his estate will be converted thereby into a defeasible fee, subject to be defeated upon the happening of the defeasance. Daniel v. Thompson, 14 B. M. 662, Sale v. Crutchfield, 8 Bush 636; Trust Co. v. Erdman, 22 Ky. L. R. 729, and Murphy v. Murphy. 182 Ky. 731.

It appears that the beneficiary of the limitation over, Mrs. Putnam, conveyed to her sister, Mrs. Purdy, by quit claim deed, all of her interest in the land and her deed operated to destroy the defeasance clause and to perfect the title in Mrs. Purdy. We, therefore, conclude that the alleged defect in plaintiff's title did not exist.

The attempted defense relating to the infection of the farm with wild onions is not discussed in brief of counsel and seems to have been abandoned on this appeal. Whether false and fraudulent representation by the vendor, made under proper conditions, as to the quality of the land for specific purposes, would be a meritorious defense it is not necessary to determine, since we are satisfied that the allegations of the answer attempting to rely thereon were insufficient for the purpose. It was nowhere alleged in the answer that plaintiff *knew* that defendant was purchasing the farm for dairy purposes, nor, even that defendant was purchasing it for such purposes. Neither is it alleged that defendant would not have purchased the farm had he known of such defects, and it is not even alleged that any representation was *fraudulently* made by plaintiffs. The substance of the allegation is, that plaintiff represented the farm to be suitable for dairy purposes, when in fact it was not because of the existence of the wild onions concerning which defendant was ignorant, and that it was practically impossible for him to discover the fact. It is not alleged that on account thereof defendant was prevented from, or sustained damages as a result of, using the farm for any purpose. Pleadings are construed more strongly against the pleader, which rule does not require the court to infer or imply necessary allegations to constitute a cause of action or defense.

We, therefore, conclude that whatever merit, if any, such facts might possess as a defense in an action of this

character, if properly pleaded, it can not, for the reasons stated, be considered in this case, and that the court did not err in sustaining the demurrer to the answer, which necessarily results in an affirmance of the judgment, and it is so ordered.